# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-01097-COA

**KATELAN DEMETRICE JOHNSON A/K/A**   **APPELLANT**
**KATELAN D. JOHNSON**

**v.**

**STATE OF MISSISSIPPI**   **APPELLEE**

DATE OF JUDGMENT:          09/25/2024
TRIAL JUDGE:               HON. MARK SHELDON DUNCAN
COURT FROM WHICH APPEALED: LEAKE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:   RANKIN SUMNER FORTENBERRY
                           OFFICE OF STATE PUBLIC DEFENDER
                           BY: JUSTIN TAYLOR COOK
ATTORNEY FOR APPELLEE:     OFFICE OF THE ATTORNEY GENERAL
                           BY: PARKER ALAN PROCTOR JR.
DISTRICT ATTORNEY:         STEVEN SIMEON KILGORE
NATURE OF THE CASE:        CRIMINAL - FELONY
DISPOSITION:               AFFIRMED - 06/02/2026
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., LAWRENCE AND EMFINGER, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     A jury convicted Katelan Johnson of a charge for possession of more than two, but less than ten, grams of methamphetamine under Mississippi Code Annotated section 41-29-139(c)(1)(C) (Rev. 2023). The trial court sentenced him as a second or subsequent drug offender[1] to sixteen years in the custody of the Mississippi Department of Corrections, with

---

[1] Johnson was also indicted and convicted under Mississippi Code Annotated section 41-29-147 (Rev. 2023), which provides that second or subsequent drug offenders may be subject to enhanced penalties. In his indictment, Johnson's prior conviction for possession of cocaine in 2003 was offered to enhance his sentence, but at the sentencing hearing, the trial court noted Johnson's extensive pre-sentencing investigation report, which showed

four years suspended and twelve years to serve, followed by four years of supervised probation. Johnson now appeals, arguing the trial court erred in failing to suppress the results of an inventory search after an allegedly unconstitutional impoundment of a vehicle on private property. We find no error and affirm.

## STATEMENT OF FACTS

¶2. On the morning of January 26, 2023, Mississippi Bureau of Investigations Officer Robert Atkinson and Attorney General Investigator Justin Sims (Officer Sims) drove together to 1329 Pleasant Hill Road in the Good Hope Community of Leake County, Mississippi. At the time, Officer Atkinson had been helping local agencies with drug cases, and Officer Sims was "contracted out" to the Department of Homeland Security. The purpose of their visit was to talk to Justin Johnson (Justin),[2] who lived at that address.

¶3. The officers arrived at the property in an unmarked vehicle. The property included a wood-frame house, a shed, a trailer, and a small mechanic shop off the driveway, where Justin worked on small engine machinery, such as lawn mowers, motorcycles, and four-wheelers, as well as vehicles. The officers noticed a GMC pickup truck parked in the driveway, closer to the shop than to the residence. As they exited their vehicle, an individual exited the truck from the driver's seat. He walked to the front of the truck as if he were

---

Johnson had two other drug convictions in 2007 for the sale of methamphetamine and possession of cocaine. The trial court stated that while Johnson was not indicted as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2020), he "could have easily been."

  [2] Justin and the defendant are not related.

going to raise its hood. Officer Atkinson told the individual that they were looking for Justin. He responded that Justin was not there but should be back shortly. The individual explained that he was also waiting on Justin because he and Justin were going to repair the GMC truck, which probably needed a thermostat. The person told Officer Atkinson that the truck belonged to a family member.

¶4. Officer Sims recognized the individual as Katelan Johnson and told this information to Atkinson, who then asked the individual his name; the defendant confirmed that he was Katelan Johnson. Johnson then began getting back into the truck as if to leave. Officer Atkinson told Johnson to step out of the vehicle, as Atkinson believed Johnson had outstanding arrest warrants in Scott County, Mississippi. Johnson complied. Officer Atkinson then called Mississippi Bureau of Investigations Agent Daniel Ogletree and confirmed that there were two outstanding warrants for Johnson in Scott County for the sale of methamphetamine.[3] The officers then arrested Johnson and read him his *Miranda*[4] rights.

¶5. Officer Atkinson testified that he went around to the passenger's side of Johnson's vehicle to make sure there were no valuables in the truck because he was "calling a tow truck to get the truck out of these people's yard." He noticed that nobody else was present on the property to give permission to leave the truck there. Officer Atkinson testified that in this situation, when the arrested individual does not own the vehicle in which he was

---

[3] Agent Ogletree testified that both arrest warrants were issued on November 7, 2022, and were served on Johnson after his arrest.

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

arrested, it is standard practice for the officers to call a tow truck to remove the vehicle. Further, he testified that performing an inventory search for valuables in a vehicle to be towed is a routine part of the "booking process."

¶6.     Officer Atkinson opened the passenger's side door to perform the inventory search for valuables. On the front passenger's seat, in plain view, was an open backpack. Inside the backpack, Officer Atkinson saw a bag of insulin syringes and a bag of what appeared to be methamphetamine.[5] Underneath the syringes and drugs was a set of scales. A photograph of the open backpack was entered into evidence at trial. Officer Atkinson testified that the backpack was within arm's reach of the driver's seat of the truck. No other valuables were found in the truck except a thermostat and a gasket.

¶7.     Justin was the only witness for the defense. He testified that Johnson was a lifelong acquaintance. In January 2023, Johnson had been helping Justin with odd jobs at the shop. Justin testified that while he was not present at the shop when Johnson was arrested, he claimed the GMC truck had been there several days for Justin to "take a look at it" and confirm any needed repairs. On January 26, Johnson called Justin wanting to work on the truck and perform some odd jobs for money. Justin admitted on the witness stand that he was recently released from prison for selling methamphetamine out of his shop; however, he denied ever using methamphetamine with Johnson. Justin also denied buying

_____

[5] A forensic expert from the Mississippi Forensics Laboratory testified that the substance removed from the backpack was 7.04 grams of methamphetamine.

4

methamphetamine from Johnson or knowing anything about the backpack or its contents.

¶8.     At trial, a hearing occurred during Officer Atkinson's direct examination by the State regarding what happened during and after Johnson's arrest.   The trial court excused the jury, and the hearing ensued with Officer Atkinson and Agent Ogletree testifying for the State.[6]  Officer Atkinson proffered his testimony.  After a few questions, defense counsel stated to the trial court, "Your Honor, this is where we would object to the . . . ensuing testimony about [the] search. . . ."  Officer Atkinson continued his proffer, after which the prosecution called and examined Agent Ogletree.   Defense counsel did not call any witnesses at the hearing and did not cite any legal authority for his arguments.  He explained to the trial court his objection was that the State had failed to produce sufficient evidence to show the search was properly performed and incident to arrest.  He argued that the officers exceeded their search premises by searching a vehicle that Johnson did not own. Further, defense counsel argued the search was beyond Johnson's "immediate area."

¶9.     The trial court overruled Johnson's objection, finding both the impoundment and the inventory search were proper.  The trial court noted Johnson was arrested under valid warrants while on another individual's property, when neither the property owner nor

---

    [6] Johnson did not file a pretrial motion to suppress the evidence of the impoundment and inventory search.  Instead, the matter was brought up during trial as an "objection." The record indicates that the State knew Johnson wanted to object to the admission of this evidence when the State suggested to the trial court: "[A]t this time, it might be prudent to have a brief hearing outside the presence of the jury based on statements [defense counsel] told me earlier."

anyone else was present. The trial court ruled that under these facts, Officer Atkinson was within his legal rights to have the vehicle impounded. The trial court stated:

> If they hadn't have done that [(impound the vehicle)], they'd just be leaving Mr. Johnson's vehicle, or whoever owned it, in the middle of nowhere with nobody responsible for it. If it comes up missing or damaged or property from it missing or damaged then they'd get the blame for it.

The trial court also found the subsequent inventory search of the vehicle was proper to prevent the loss or destruction of any valuables left in it. The defense renewed its objection throughout the remainder of trial, but the objections were overruled.

¶10. The jury found Johnson guilty as charged, and the court sentenced Johnson as provided above. Johnson now appeals, raising one issue regarding the constitutionality of the truck's impoundment.

## STANDARD OF REVIEW

¶11. A "mixed standard of review" is applied "with respect to the denial of a motion to suppress under the Fourth Amendment." *Holloway v. State*, 282 So. 3d 537, 541 (¶13) (Miss. Ct. App. 2019) (quoting *Dies v. State*, 926 So. 2d 910, 917 (¶20) (Miss. 2006)). "[W]e are bound by the trial judge's findings as to the underlying 'historical facts' unless those findings are 'clearly erroneous.'" *Id.* "'The ultimate determination of the reasonableness of' the impoundment, however, 'is a question of law to be reviewed . . . de novo.'" *United States v. Trujillo*, 993 F.3d 859, 864 (10th Cir. 2021) (quoting *United States v. Ibarra*, 955 F.2d 1405, 1409 (10th Cir. 1992)).

¶12. When reviewing the denial of a motion to suppress evidence, this Court "must

6

determine whether the trial court's findings, considering the totality of the circumstances, are supported by substantial credible evidence." *Pinter v. State*, 221 So. 3d 378, 388 (¶26) (Miss. Ct. App. 2017) (quoting *Gore v. State*, 37 So. 3d 1178, 1188 (¶25) (Miss. 2010)). "Where supported by substantial credible evidence, this Court shall not disturb those findings." *Id.* (quoting *Moore v. State*, 933 So. 2d 910, 914 (¶9) (Miss. 2006)).

## ANALYSIS

¶13.   Johnson argues that the trial court erred in denying his motion to suppress the evidence of methamphetamine and syringes collected during an inventory search of the GMC truck after he was arrested for outstanding warrants. Johnson claims the warrantless impoundment of the vehicle violated the Fourth Amendment; therefore, he argues, the resulting inventory search was also improper, and the incriminating evidence should have been suppressed. The State responds by focusing predominantly on the constitutionality of the inventory search.

¶14.   "Impounding a vehicle qualifies as a seizure subject to a Fourth Amendment analysis." *Degenhardt v. Bintliff*, 117 F.4th 747, 756 (5th Cir. 2024) (citing *United States v. McKinnon*, 681 F.3d 203, 207-08 (5th Cir. 2012)). "When an individual is arrested and there is no one readily available to take possession of the arrestee's vehicle, the arresting officer will often have the car impounded." *Ray v. State*, 798 So. 2d 579, 583 (¶13) (Miss. Ct. App. 2001). This Court has held that "it is permissible for officers to conduct an inventory search of the vehicle when the circumstances require it to be impounded by the

7

officers, regardless of the reason for the necessary impoundment." *Sills v. State*, 359 So. 3d 603, 608-09 (¶29) (Miss. 2023) (quoting *Black v. State*, 418 So. 2d 819, 821 (Miss. 1982)). The search "is for the protection of both the vehicle owner and the impounding officers." *Id.* at 608-09. However, "the decision to impound is properly analyzed as distinct from the decision to inventory."[7] *McKinnon*, 681 F.3d at 207 n.3 (quoting *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996)).

### 1. Waiver

¶15. Johnson argues the impoundment was unconstitutional under the Fourth Amendment. However, we note Johnson did not challenge the impoundment in the trial court.[8] Instead, at the suppression hearing, defense counsel objected to testimony about the inventory search. The defense made no objection about the legality of the impoundment, although the trial court ultimately found it proper, along with the inventory search.

¶16. It is well settled that "when a party makes an objection on specific grounds, it is considered a waiver regarding all other grounds." *Copeland v. Copeland*, 904 So. 2d 1066, 1073 (¶24) (Miss. 2004) (citing *Burns v. State*, 729 So. 2d 203, 219 (¶67) (Miss. 1998)). Further, "an objection at trial cannot be enlarged in a reviewing court to embrace an omission not complained of at trial." *Burns*, 729 So. 2d at 219 (¶67). "The rule that failure to object constitutes waiver applies to Fourth Amendment claims as well." *Walker v. State*,

---

[7] While there is a large amount of caselaw concerning inventory searches, on which the State focuses, there are far fewer cases on impoundment.

[8] On appeal, Johnson retained different counsel from trial.

8

913 So. 2d 198, 224 (¶86) (Miss. 2005) (citing *Stevens v. State*, 458 So. 2d 726, 730 (Miss. 1984)).

¶17. Here, Johnson did not object to evidence about the impoundment, but to the inventory search. Defense counsel argued that the search was improperly performed and not incident to arrest. Additionally, defense counsel argued that Johnson did not own the vehicle, and the search was beyond where Johnson was standing. On appeal, Johnson is now seeking to enlarge his argument to encompass an improper impoundment. We find this argument was not properly preserved for our review; therefore, it is waived.

¶18. However, because the trial court ruled on the impoundment, finding it proper, we shall address the legality of the impoundment, waiver notwithstanding.

### 2. Reasonableness of Impoundment

¶19. Johnson argues the trial court erred in finding the truck's impoundment proper because the State offered no evidence that the truck was impounded under a standardized procedure or served a community caretaking function. He points out that the truck was owned by a third party, parked on private property by permission, and posed no threat to public safety.

¶20. The trial court found the impoundment proper based upon the following evidence during the suppression hearing. At the hearing, which occurred mid-trial, the only evidence offered was from the State, which called Officer Atkinson and Agent Ogletree to the stand. They testified about the facts surrounding Johnson's arrest for outstanding warrants, the

9

decision to impound the vehicle, and the resulting inventory search. Defense counsel's objection was to Officer Atkinson's testimony about the inventory search of the truck, which the trial court noted. The defense made no objection about the impoundment; however, Officer Atkinson testified about his justification for impounding the vehicle:

> I went around to the passenger side of the vehicle going to look inside . . . to make sure there was no valuables or anything because I was calling a tow truck *to get the truck out of these people's yard. . . . Because no one was home for him to okay it to be left there.*

(Emphasis added). Officer Atkinson testified that he and Officer Sims saw no individual on the property other than Johnson. Atkinson testified that the purpose of performing an inventory search of the vehicle was "[t]o make sure there w[ere] no valuables left in the vehicle to go to the tow yard," which was "standard procedure" when a vehicle is towed and something that is "routinely" done "as part of [the] booking process." Officer Atkinson then proceeded to testify about the inventory search and finding the contraband in plain view. Agent Ogletree did not testify about the impoundment or the inventory search but confirmed that there were outstanding warrants for Johnson's arrest.

¶21. During cross-examination, Officer Atkinson testified that he did not know Johnson was a mechanic, but he knew the vehicle was parked in the driveway closer to the "shop yard" than the residence. The vehicle was not running, but the keys were in the ignition. He knew the vehicle belonged to one of Johnson's family members, and a license-plate check confirmed this fact. He knew Johnson was at the property to wait on Justin to put a thermostat in the truck. Officer Atkinson confirmed that Johnson could exercise control

10

over the backpack when he reentered the vehicle, and Atkinson said that the reason for looking in the backpack was for "inventory," not securing a later prosecution. During the State's redirect examination, Officer Atkinson testified that he found nothing of value in the vehicle except the backpack, a thermostat, and a gasket. Importantly, the defense did not offer Justin's testimony claiming the truck had been parked at his residence near the shop for several days waiting on repairs.

¶22. The trial court found both the impoundment and resulting inventory search proper. Johnson was arrested under proper warrants while on another individual's property, and nobody else was present to give permission to leave the truck. The trial court also noted that if the truck was left there and became "missing or damaged," the officers would "get the blame."

¶23. A vehicle may be impounded under the Fourth Amendment without a warrant if it falls under the "community caretaking" exception. *Degenhardt*, 117 F.4th at 756 (citing *McKinnon*, 681 F.3d at 207-08). Under this exception, police may impound a vehicle "in furtherance of 'public safety' or 'community caretaking functions,' such as removing 'disabled or damaged vehicles,' and 'automobiles [that] violate parking ordinances . . . jeopardiz[ing] both the public safety and the efficient movement of vehicular traffic.'" *McKinnon*, 681 F.3d at 208 (citing *South Dakota v. Opperman*, 428 U.S. 364, 371 (1976)). "The State bears the burden to show that a warrantless search falls under one of the permissible exceptions" to the warrant requirement. *Murshid v. State*, 326 So. 3d 489, 497

11

(¶22) (Miss. Ct. App. 2021) (quoting *Jones v. State*, 261 So. 3d 1131, 1139 (¶26) (Miss. Ct. App. 2018)).

¶24. Federal circuit courts have "grappled with the constitutionality of community-caretaking impoundments," using different approaches. *United States v. Sanders*, 796 F.3d 1241, 1247 (10th Cir. 2015). As *Sanders* explained, "[t]here is a clear divide between the First, Third, and Fifth Circuits, which never consider whether an impoundment follows standardized procedures, and the Seventh, Eighth, Ninth, and D.C. Circuits," which do. *Id.* at 1248.[9] The latter circuits, and the Tenth Circuit, recognize that "the existence of standardized criteria [is] the touchstone" of whether an impoundment is lawful. *Id.* at 1248-49. The former circuits, however, "conclude that reasonableness is the only test" for determining if the vehicle impoundment is justified by a community caretaking purpose, "without reference to any standardized criteria." *Id.* (citing *McKinnon*, 681 F.3d at 208). The reasonableness "of the 'community caretaker' impound [is] viewed in the context of the facts and circumstances encountered by the officer." *McKinnon*, 681 F.3d at 208.

¶25. Another distinction is whether the impoundment occurred on public or private property. On appeal, Johnson points to the Tenth Circuit as instructive, where the community-caretaking exception "operates differently depending on the nature of the property from which the vehicle is impounded." *United States v. Ramos*, 88 F.4th 862, 867

---

[9] "There are also other subtle differences between the tests applied" for the majority of circuits. *Id.*

12

(10th Cir. 2023). "When the vehicle is located on public property . . . officers have far greater authority to impound." *Id.* (citing *United States v. Venezia*, 995 F.3d 1170, 1175 (10th Cir. 2021)). But when the vehicle is located on private property, and the vehicle "is neither 'obstructing traffic [n]or creating an imminent threat to public safety,' a community-caretaking rationale 'is less likely to exist.'" *Id.* The Tenth Circuit imposes a "heightened requirement on police" where the impoundment must be "justified by both a standardized policy and a reasonable, non-pretextual community-caretaking rationale." *Id.* at 867-68 (citing *Sanders*, 796 F.3d at 1248).[10]

¶26. Here, the trial court found the impoundment proper based upon the testimony of Officer Atkinson. The defense did not present any legal authority on impoundment or the community-caretaking exception to the trial court; the only matter on appeal that Johnson challenges at all is the impoundment, and then he cites legal authority that was never

---

[10] The Tenth Circuit has identified five "non-exclusive factors" that are helpful to determining whether impoundment is justified by a reasonable, non-pretextual community caretaking rationale:

> (1) whether the vehicle is on public or private property; (2) if on private property, whether the property owner has been consulted; (3) whether an alternative to impoundment exists (especially another person capable of driving the vehicle); (4) whether the vehicle is implicated in a crime; and (5) whether the vehicle's owner and/or driver have consented to the impoundment.

*Sanders*, 796 F.3d at 1250. In *Sanders*, the Court found the impoundment improper because the officers were not guided by standardized criteria when the vehicle at issue was legally parked in a private lot. *Id.*

13

presented to the trial court. It is well established that when an appellant cites new legal authority or makes legal arguments on appeal that were not presented to the trial court, they cannot be considered and are waived. We "cannot find that a trial judge committed reversible error on a matter not brought before him or her to consider." *Smith v. State*, 986 So. 2d 290, 295 (¶13) (Miss. 2008) (citing *Montgomery v. State*, 891 So. 2d 179, 187 (¶33) (Miss. 2004)). Because the trial court was never presented with these standards or factors utilized by the Seventh, Eighth, Ninth, Tenth, and D.C. Circuits in making its ruling on the motion to suppress, we cannot consider them. Further, we have not found any Mississippi authority exactly on point articulating a standard on impoundment.

¶27. Even so, under the totality of the circumstances, we find the trial court's ruling on the reasonableness of the impoundment was supported by substantial evidence. Officer Atkinson testified that under the circumstances here, it was standard practice to have the vehicle towed. In the context of these facts, impounding the truck was reasonable under the community caretaking exception. Even though the vehicle posed no threat to public safety, the owner of the private property, Justin, was not present to give permission to leave the truck there, and the officers did not want to leave the truck in a rural area.[11] Importantly, at

---

[11] Johnson argues the trial court's ruling that if the truck or its contents came up lost or stolen, the officers would be to blame was "irrelevant" to the community caretaking analysis, but we disagree. While Johnson quotes *McKinnon* in support of his contention (that "[n]othing in *Opperman* suggests that limiting an officer's liability in any way related to the purpose of the community caretaking exception"), Johnson omits the next sentence of *McKinnon*, which states, "We have recognized, however, that an appreciable risk of theft or vandalism may support an officer's decision to impound a vehicle." *McKinnon*, 681 F.3d

14

the suppression hearing, the trial court never heard the testimony that Justin had allegedly given Johnson permission to leave the truck there because the defense did not present it. While the truck did not belong to Johnson, it was under his control. The keys were in the ignition, and when Johnson suspected he was under arrest, he tried to leave in the vehicle. We find Officer Atkinson's impounding the vehicle reasonable under the specific facts and circumstances encountered by the officers.

## CONCLUSION

¶28.    For the foregoing reasons, the trial court did not err in finding the impoundment and inventory search proper. The trial court properly denied Johnson's motion to suppress the evidence of methamphetamine and syringes. Accordingly, we affirm Johnson's conviction and sentence.

¶29.    **AFFIRMED.**

**CARLTON, P.J., McDONALD, LAWRENCE, EMFINGER AND WEDDLE, JJ., CONCUR. WILSON, P.J., WESTBROOKS AND McCARTY, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LASSITTER ST. PÉ, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**

---

at 208. Leaving the unsecured truck at a rural residence was a risk the officers recognized.